**Richard KRAMER, Appellant,**

v.

**ALLSTATE INSURANCE CO., Appellee.**

**No. 83822.**

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 11, 1994.

Rehearing Denied Nov. 15, 1995.

Certiorari Denied Dec. 12, 1995.

Rex K. Travis, Margaret E. Travis, Oklahoma City, and James K. Deuschle, Tulsa, for Appellant,

James K. Secrest, II, Melvin C. Weiman, Tulsa, Oklahoma, for Appellee.

### MEMORANDUM OPINION

CARL B. JONES, Judge:

Appellant Richard Kramer was injured in a collision with an uninsured motorist on September 13, 1993. At the time of the accident, Kramer was insured by Appellee Allstate Insurance Company ["Allstate"] under an automobile insurance policy which included uninsured motorist ["UM"] coverage. Kramer insured three vehicles with the policy, for each of which Allstate charged him a separate amount for bodily injury liability, property damage liability, and medical payments coverages. However, the declarations page of the policy indicates only one amount for Kramer's UM coverage limits of $25,000 per person and $50,000 per accident (the same limits he maintained on the bodily injury liability coverage).[1]

The UM coverage[2] [Coverage SS] in Kramer's insurance policy provided coverage

---

1. *Webster's II New Riverside Dictionary*, Riverside Press, 1984, p. 1281.

1. The relevant portion of the declarations page on Kramer's policy is reproduced as an appendix to this opinion.

2. The UM coverage at issue here is part of the "Oklahoma Automobile Policy Amendments" which modified the policy Kramer originally purchased.

for damages that any insured person was "legally entitled to recover" for bodily injuries from the owner or operator of an uninsured motor vehicle. Under the subheading "Limits of Liability" the policy stated:

> The uninsured motorists limit stated on the declarations is the maximum amount payable for this coverage by this policy for any one accident. This means the insuring of more than one auto for other coverages afforded by this policy will not increase **our** limit of liability beyond the amount shown on the declarations.
>
> Regardless of the number of insured autos under this coverage, the specific amount shown on the declarations is the maximum **we** will pay under this policy for:
>
> 1. "each person" for all damages arising out of **bodily injury** to any one person in any one **motor vehicle** accident, including all damages sustained by anyone else as a result of that **bodily injury.**
>
> 2. "each accident" for all damages arising out of **bodily injury** to two or more persons in any one **motor vehicle** accident. This "each accident" limit is subject to the "each person" limit.

Allstate paid Kramer the UM coverage limit, $25,000, but Kramer demanded an additional $50,000, asserting he was entitled to aggregate or "stack" separate UM coverage limits for each vehicle insured on his policy. Allstate refused Kramer's demand, and Kramer then commenced this lawsuit. The trial court granted summary judgment for Allstate.

Allstate supported its motion with an affidavit from Frederick Cripes, Allstate's Vice–President for Marketing Administration. Cripes averred that in March, 1986, Allstate rewrote the UM coverage on its automobile liability policies in Oklahoma to preclude stacking. Before then, said Cripes, Allstate

had assumed UM coverage in Oklahoma would be stacked, but thereafter not; and, so, after March, 1986, based on actuarial studies, Allstate adopted a two-tiered UM premium rate structure for all of its automobile policies in Oklahoma. Allstate charged one amount for a given level of coverage on single-vehicle policies, but charged a higher premium for the same level of coverage on multiple vehicle policies. At the time of the accident, Allstate charged $31.40 for 25/50 UM coverage on a policy insuring a single car, but $58.70 for the same coverage on a policy which covered more than one vehicle.[3]

In the trial court, Allstate sought to defeat Kramer's stacking theory by aligning this case with other "single premium" cases: *See, e.g., Scott v. Cimarron Insurance Co.,* 774 P.2d 456 (Okla.1989); *Coker v. Allstate Insurance Co.,* 877 P.2d 1175 (Okla.App.1994), *cert. denied; Davis v. Equity Fire & Casualty Co.,* 852 P.2d 780 (Okla.App.1993), *cert. denied.* We have examined those opinions, and conclude that each is distinguishable. As to the first two vehicles covered, this is not a "single premium" case, because Kramer paid a higher premium for the same amount of coverage than he would have paid had he insured only a single vehicle on his policy. However, as to a third vehicle, no additional premium was charged or paid. Allstate used a policy with two premium rate schedules; a single car schedule and a multicar rate schedule. This is a two premium policy and it can be stacked. Note that under this two premium schedule, the recovery can only be two times the uninsured coverage regardless of how many more vehicles are insured under the policy.

Based on the summary judgment record below, we conclude that by charging nearly twice as much for UM coverage on multiple-vehicle policies as it did for single-vehicle policies, Allstate created the reasonable contractual expectation that the amount of UM coverage on a multiple-vehicle policy would be correspondingly greater than the amount of coverage on a single-vehicle policy. *See Scott,* 774 P.2d at 458 ("Our cases permitting

---

**3.** This is consistent with Cripes affidavit, in which he stated that relatively few policies in Oklahoma insured more than two cars. We take judicial notice that the UM premium charged by Allstate for two or more cars was approximately 1.9 times the amount charged for such coverage on a single-vehicle policy.

stacking have done so based on our perception of the reasonable contractual expectations of the parties as reflected, in part, by the number *and amount* of uninsured motorist premiums paid.") (emphasis added). Allstate cannot defeat that expectation of greater coverage by policy language which purports to limit such coverage. *See Lake v. Wright,* 657 P.2d 643, 645–46 (Okla.1982) (insured paid separate UM premiums on one policy for six vehicles; "limit of liability" clause held unenforceable when it would prevent aggregating UM coverage).

We therefore hold that Kramer may stack the equivalent of twice the limits on his UM coverage, and he is entitled to a maximum of $50,000 UM coverage on the Allstate policy. The trial court erred by denying Kramer's motion for summary adjudication of the coverage limits, and by granting Allstate's motion. We reverse the trial court judgment and remand for determination of the amount of Kramer's damages.

Kramer has argued that Allstate had a *duty* to offer him "stackable" UM coverage, and by the breach of such obligation Allstate would be liable to the same extent as if Kramer had such coverage on his policy. Because we have concluded that the judgment must be reversed for failure to permit stacking, we decline to address this contention.

The trial judgment is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

HANSEN, P.J., and GARRETT, V.C.J., concur.

## APPENDIX

```
1   82   REGAL   [VIN number]
2   84   HONDA   [ " " ]
3   79   CENRY   [ " " ]
```

**AA BODILY INJURY LIABILITY**
1  2  3        $25,000 EACH PERSON — $50,000 EACH OCCURRENCE

**BB PROPERTY DAMAGE LIABILITY**
1  2  3                    $25,000 EACH OCCURRENCE

**CC AUTOMOBILE MEDICAL PAYMENTS**
1  2  3                    $ 1,000 EACH PERSON

OTHER COVERAGES
  SS  UNINSURED MOTORISTS
    BODILY INJURY
    $25,000 EACH PERSON —    $50,000 EACH ACCIDENT

### COVERAGES, PREMIUMS AND OTHER POLICY INFORMATION

| COVERAGE DESCRIPTION | 82–REGAL | 84–HONDA | 79–CENRY |
|---|---|---|---|
| AA & BB BODILY INJURY & PROPERTY DAMAGE LIAB. | $107.00 | $84.00 | $107.00 |
| CC AUTO MEDICAL PAYMENTS | $ 8.00 | $ 6.00 | $ 8.00 |
| TOTAL PREMIUM BY VEHICLE | $115.00 | $90.00 | $115.00 |
| | | | |
| GOOD DRIVER RATE APPLIED | YES | YES | YES |
| MULTIPLE CAR DISCOUNT | YES | YES | YES |
| ECONOMY CAR DISCOUNT | | YES | |

| | OTHER |
|---|---|
| OTHER COVERAGES | |
| SS UNINSURED MOTORISTS | $ 58.70 |
| | |
| TOTAL PREMIUM | $378.70 |